JULIE A. MERSCH, ESQ.
Nevada Bar No. 004695
LAW OFFICE OF JULIE A. MERSCH
1100 E. Bridger Ave.
Las Vegas, NV 89101
(702) 387-5868
Fax: (702) 387-0109
jam@merschlaw.com
*Attorney for Plaintiff Jenail Newton*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JENAIL NEWTON, | CASE NO.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| METROPOLITAN LIFE INSURANCE COMPANY, as Claims Administrator for the Navy Exchange Service Command Disability Plan, | |
| Defendant. | |

Plaintiff JENAIL NEWTON, by and through her attorney, JULIE A. MERSCH, ESQ., complains and alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for declaratory and injunctive relief and disability benefits owed, and arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

2. This Court has subject matter jurisdiction under ERISA, 29 U.S.C. § 1132(e)(1); and general federal jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this district, pursuant to 29 U.S.C. § 1132(e)(2).

## GENERAL ALLEGATIONS

4. Plaintiff JENAIL NEWTON ("NEWTON") at all times relevant was a qualified participant in the Navy Exchange Service Command Disability Plan ("subject Plan") within the meaning of 29 USCA § 1002(7) of ERISA.

5. At all times relevant, Navy Exchange Service Command was NEWTON's employer and the Plan Administrator of the subject Plan.

6. Defendant METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE") is Navy Exchange Service Command's agent and the designated Claims Administrator of the subject Plan. Thus, MET LIFE was and is a fiduciary with respect to the Plan as that term is defined pursuant to 29 U.S.C. § 1002(21)(A).

7. Upon information and belief, MET LIFE fully insures the subject Plan and performs claims handling functions for the subject Plan, including the ultimate decision of whether to accept, deny, or terminate a claim.

8. The court's review of Plaintiff's claim termination is *de novo.*

9. Pursuant to the terms of the subject Plan, Plaintiff made a claim to MET LIFE for long-term disability benefits for disability beginning on December 28, 2009. The LTD claim was accepted and paid through May 2, 2019. Pursuant to the terms of the policy, MET LIFE paid NEWTON $922.50 per month during this period.

10. The duration date of the policy is April 1, 2047. If benefits are reinstated and paid through this date, METLIFE would pay NEWTON an approximate additional $308,976.00 in total disability benefits.

11. As set forth in the subject Plan, **Disability or Disabled** means that, due to Sickness or as a direct result of accidental injury:

- You are receiving Appropriate Care and Treatment and complying with the requirements of such treatment; and
- You are unable to earn:
- during the Elimination Period and the next 24 months of Sickness or accidental injury, more than 80% of Your Predisability Earnings at Your Own Occupation from any employer in Your Local Economy; and

- after such period, more than 60% of your Predisability Earnings from any employer in Your Local Economy at any gainful occupation for which You are reasonably qualified taking into account Your training, education and experience.

12. At the time of her disability in December 2009, NEWTON worked in a medium duty position as a Sales Clerk for her employer Navy Exchange Service Command.

13. After NEWTON satisfied the Elimination Period, MET LIFE accepted and paid

total disability benefits from June 26, 2010 through June 26, 2012 under the "Own Occupation" disability definition and from June 27, 2012 through May 2, 2019 under the "Any Gainful Occupation" disability definition, due to *inter alia,* lumbar radiculopathy; lumbar fusion; migraine headaches; and bilateral carpal tunnel syndrome, with related symptoms of neck, back, and hip pain; headaches; hand pain and numbness; difficulty lifting; and limitations in prolonged standing and walking.

14. Thus, MET LIFE determined that NEWTON satisfied its "Any Gainful Occupation" definition of disability for almost seven (7) years prior to claim termination. In so doing, METLIFE determined that NEWTON could not perform any gainful occupation on a full-time basis.

15. MET LIFE also determined in 2010 that NEWTON's "bilateral very severe grade CTS [would] prevent EE from performing the duties of any job that required extensive use of the hands."

16. In March, 2019, MET LIFE requested that NEWTON undergo an Independent Medical Evaluation (IME) with a physical medicine and rehabilitation certified physician selected by its vendor, MCN. NEWTON attended the IME with Marek Korzeniowski, MD on March 20, 2019. Dr. Korzeniowski determined that NEWTON was able to sit 30 minutes at a time and then change positions after 30 minutes. He made this assessment based on his observation that NEWTON sat for 30 minutes in his office before having to change positions and stand up. He did not determine how long NEWTON would be able to sit in an 8 hour workday or her ability to work with chronic pain. Nor did he determine how long she could use her hands to perform simple or fine motor grasping over an 8 hour workday.

17. Dr. Korzeniowski stated that NEWTON still suffered from multiple disabling conditions that led to METLIFE's payment of total disability benefits through May 2, 2019 and which conditions had either not improved or had worsened over time:

> Several diagnoses of the claimant are disabling. These include a lumbar spine condition consisting of lumbar radiculopathy with sciatica, grade 1 spondylolisthesis and spondylolysis at L5-S1 level. The lower back condition started in 2007 after heavy lifting. The condition became progressively worse and necessitated in time in October 2016 an L5-S1 laminectomy and fusion. The condition causes the claimant to have pain in the lower back and the lower extremities, which is affecting her activities of

daily living. Other disabling conditions are bilateral carpal tunnel syndrome status post carpal tunnel release, and the condition started in December 2009, and at the present time, the claimant is still symptomatic.

Myofascial pain syndrome in the cervical and thoracic region. There is no specific date available on the onset, although, it started several years prior to the examination.

Letter dated 4/5/19 to Kim Herrin at MetLife from Marek Korzeniowski, MD.

18. MET LIFE referred the file for an employability analysis ("EAR") to identify occupations meeting specific wage requirements as set forth in the policy, compatible with NEWTON's education level and work history, and Dr. Korzeniowki's IME findings.

19. Based on MET LIFE's EAR, it identified several occupations that it determined NEWTON could perform on a full-time basis, including Telephone Solicitor, Food and Beverage Order Clerk, Check Cashier, Food Checker, and Sorter. The EAR did not determine the essential duties of each occupation with regard to their sitting, standing, and hand use requirements, including NEWTON's ability to perform these essential duties with her chronic pain.

20. On May 3, 2019, MET LIFE terminated NEWTON's LTD claim, stating *inter alia,* that she was no longer disabled as defined in the Plan Document.

21. On or about September 30, 2019, NEWTON appealed MET LIFE's termination of LTD benefits and provided medical documentation in support of her ongoing disability.

22. On appeal, MET LIFE had a paper review completed by Roger Kasendorf, D.O. via vendor Genex. Dr. Kasendorf's restrictions and limitations significantly differed from those of IME Dr. Korzeniowski regarding *inter alia*, NEWTON's ability to sit over an 8 hour workday; the existence of chronic pain throughout her body; and her ability to use her hands due to her carpal tunnel syndrome and damage related thereto.

23. MET LIFE denied NEWTON's appeal in a letter dated February 21, 2020, and advised NEWTON that the decision was its final decision on the claim, and further advised her of her right to file a federal lawsuit under ERISA.

**Claim for Relief: Wrongful Denial of Benefits under ERISA
§502(a)(1)(B), 29 U.S.C. §1132 (A)(1)(B)**

24. Paragraphs 1-23 are incorporated by reference as if fully set forth herein.

25. Defendant has wrongfully terminated long-term disability benefits to Plaintiff in violation of the subject Plan, ERISA, and interpretive case law and has failed to fully and fairly consider her appeal for the following reasons:

    a. In terminating NEWTON's benefits (after paying them for almost seven (7) years under the "Any Gainful Occupation" definition) and denying her appeal, MET LIFE did not point to a reason, supported by medical evidence, in support of its decision that NEWTON was capable of performing any gainful occupation in May, 2019 when she was not capable of performing any gainful occupation at the test change in June, 2012 and through the date of termination in May 2019. See Williamson vs. Aetna Life Ins. Co., 2019 WL 1446957, *7 (D.Nev.). The IME medical findings by Dr. Korzeniowski supported a *lack* of improvement in NEWTON's disabling medical conditions.

    b. MET LIFE did not fully assess NEWTON's ability to perform sedentary work while sitting frequently, given her longstanding and well documented back, neck, and hip pain. Nor did MET LIFE determine whether the identified occupations would allow her to work predictably and without pain with her hands over the course of an eight (8) hour workday, given her severe and symptomatic bilateral carpal tunnel syndrome and other co-morbid conditions.

    c. MET LIFE did not determine how NEWTON's return to the workplace (after not working for almost 9 ½ years) would affect her chronic and well-documented medical conditions and her subsequent ability to work predictably.

    d. MET LIFE failed to determine the essential work duties which NEWTON would be required to perform on a full-time basis in each of the gainful occupations identified in the EAR, rendering its decision that she could perform those occupations without foundation.

    e. MET LIFE failed to consider NEWTON's subjective reports of ongoing pain and worsening of her back and neck conditions and inability to work in a sedentary occupation.

    f. MET LIFE failed to reconcile the differing opinions of work ability provided by

Drs. Korzeniowski and Kasendorf.

26. As a result of the foregoing actions and inactions, DEFENDANT's decision to terminate benefits was not the product of a full and fair review.

**PRAYER FOR RELIEF**

27. NEWTON respectfully requests that this Court review the termination of benefits in this case; reverse MET LIFE's decision to terminate benefits; and award: 1) past long-term disability benefits from 5/3/2019 through the present and continuing, subject to the terms of the subject Plan; 2) pre-judgment and post-judgment interest; 3) payment of attorney's fees and costs associated with attempting to secure the benefits owed to her pursuant to ERISA §502(g)(1), 29 U.S.C. §1132(g)(1); and 4) any other appropriate relief allowed under law.

DATED this 28th day of December, 2022.

LAW OFFICE OF JULIE A. MERSCH

By:   /s/ Julie A. Mersch
JULIE A. MERSCH, ESQ.
Nevada Bar No. 004695
1100 E. Bridger Ave.
Las Vegas, Nevada 89101
*Attorney for Plaintiff JENAIL NEWTON*

W:\NEWTON.JENAIL\PLDGS\Complaint.wpd